ISSAAC H. ORR, Executor of Estate of REBECCA M. GHIO, et al., Appellants, v. ST. LOUIS UNION TRUST COMPANY, Trustee Under Will of JAMES C. GHIO, et al.

### Division Two, January 11, 1922.

1. **TRUST ESTATE: Net Income: Repairs and Public Improvements.** Under the provisions of a will requiring the trustee to keep the property intact and turn over the net income to named beneficiaries, it is incumbent upon the trustee to restore destroyed buildings, pay assessments for public improvements and keep the property in such condition that it will produce earnings.

2. ———: **Cost of Permanent Improvements: Special Taxes: Apportionment.** Where testator devised real estate to a trustee, to be

kept intact and the net income to be paid to his wife during her life, and after her death said trust to continue until the death of the last survivor of his children, and then the trust estate to be distributed among his surviving children, or if any was dead then among his or her children, the cost of permanent improvements, being beneficial both to the life estate and the remainder, and the amount of special taxes for public improvements chargeable against said real estate and likely to outlast the life estate, should be apportioned between the life tenant and the remaindermen; but the primary liability, at least to the full extent of the income, is upon the life tenant, and where she has died her executor is not entitled to claim from the trustee any amounts necessarily expended during her life in making permanent improvements or in paying special taxes.

3. RESULTING TRUST: Wife's Money: Delivery to Husband. The husband being dead, the wife is not a competent witness to prove that she turned over her money to him and that he, as her agent and trustee, invested it in real estate, and wrongfully took the title in his own name.

4. ———: Letters from Father's Attorney. Letters from a lawyer in Germany, with proof that they contained remittances of money inherited by a wife from her brother and other relatives in Germany, are competent as tending to show the amounts of such remittances, but they are not of themselves proof that she turned over the amount to her deceased husband, without further proof tending to charge him with the amount.

5. ———: Delivery of Wife's Property to Husband. Delivery by a wife of her separate personal property to her husband did not divest her of separate ownership therein, in the absence of proof of her written consent.

6. ———: Parol Proof. The fact that the money of the wife was received and accepted by her husband as her agent and trustee, to be invested for her benefit, may be established by parol testimony; and after his death, the subject, object, terms and conditions of the trust may be shown by the testimony of his children who testify to admissions made by him.

7. ———: In Other Property. Although the husband may have received large amounts of money from his wife, without her written consent, and accepted it as her agent and trustee to be invested in real estate, no resulting trust arises in her favor in property which was not bought with her money.

8. ———: Limitations. In the suit of the wife, or her executor, to establish a resulting trust in her deceased husband's estate for the amount of her money appropriated by him without her written consent, the Statute of Limitations did not begin to run

against her claim until he repudiated her interest as *cestui que trust*, with notice to her.

9. ——: **Equitable Matter: Presentation to Probate Court: Bar.** Where the money of the wife was appropriated by her husband, without her written consent, her claim to recover it involves the establishment of a trust and an accounting, which are matters of an equitable nature, not cognizable before the probate court in the administration of his estate, and therefore not barred by her failure to present it as a demand against his estate; but it can be prosecuted in a suit in equity against the trustee who took charge of the proceeds of the estate, according to the husband's will, at the close of the administration.

10. ——: **Husband Commingling Wife's Money With His Own: Following Fund.** A trustee cannot accept money or other property in trust and defeat its very object and purpose by commingling such property with his own in hopeless confusion. Where the wife's money went into the hands of the husband, without her written consent, and there is no evidence of its repayment or of an accounting in relation to it, or that it was lost by bad investment or in any manner for which he may be regarded as discharged, she, or her executor after her death, is entitled to recover it from his estate in the hands of the trustee to whom he bequeathed all his property, and such recovery is not to be denied because the evidence fails to follow it into any particular property.

11. ——: **Claiming Under and Contrary to Will: Election.** Where testator by his will undertakes to make disposition to devisees of property belonging to another person and by the same instrument such other person receives property belonging to other devisees, such other person cannot retain the property of such other devisees and complain of the disposition of his own property to them, but such person having accepted the property belonging to other devisees may be said to have elected to take under the instrument; but that rule has no application where the testator's widow received nothing from the other devisees and the entire net income of the trust estate was by the terms of his will payable to her during her life, for if that net income has been increased by reason of her own separate property being treated as a part of his estate the remaindermen have not been injured thereby.

12. ——: ——: **Pleading.** A petition, which in one count asserts that the testator by his will gave to the widow the entire net income from his estate in lieu of dower and asks the court to construe the words "net income," and in the second count asserts that the testator appropriated $104,000 of her money and

291 Mo.—25

asks that she be paid that sum out of his estate, is not inconsistent, although she has accepted the net income.

13. ———: **Parties to Suit.** In a suit by the executor of the will of a deceased wife to recover from her husband's estate the amount of her money which he, without her written consent, appropriated and undertook to dispose of by his will, the beneficiaries under her will are not necessary parties. Whatever money he receives will go to swell her estate, and he is empowered by law to receive it and to distribute it under the authority of the probate court.

Appeal from St. Louis City Circuit Court.—*Hon Benjamin J. Klene,* Judge.

AFFIRMED (*in part*); REVERSED AND REMANDED (*in part*).

*Leahy & Saunders* and *David W. Voyles* for appellant.

(1) The evidence conclusively shows an agreement created between the husband and wife, expressing the particular trust intended, viz., to care for, invest and protect her inherited estate for her own use and benefit; hence, a valid express trust is shown. Stevens v. Fitzpatrick, 218 Mo. 723; Godard v. Conrad, 125 Mo. App. 174; Murry v. King, 153 Mo. App. 716; Mize v. Bates County Bank, 60 Mo. App. 362; Harris Banking Co. v. Miller, 190 Mo. 664; Hammons v. Renfrow, 84 Mo 341; Foster v. Friede, 37 Mo. 36; In re Estate of Soulard, 141 Mo. 662; Riley v. Vaughan, 116 Mo. 175; Dibert v. D'Arcy, 248 Mo. 647; Walker v. Beal, 9 Wall. 743, 19 L. Er. 814; Schmucker's Estate v. Reel, 61 Mo. 592; 1 Perry on Trusts (5 Ed.) sec. 32; Underhill on Trusts and Trustees (4 Ed.) pp. 89, 90; 39 Cyc. 24; Fresch v. Wirtz, 34 N. J. Eq. 124. (2) Such evidence, consisting of the circumstances, the declarations and acts of the parties, showing that the husband agreed to hold the money, or the forms in which it was invested, as trustee for his wife, was competent. Anderson v. McPike, 86 Mo. 299; Siebald v. Christman, 7 Mo. App. 257, 75 Mo. 308; Foster v. Nowlin, 4 Mo. 18; Stewart v. Glenn, 58 Mo. 481; Baumgartner v. Guessfield, 38 Mo. 36; Davis v. Green,

102 Mo. 170; Huetteman v. Viesselmann, 48 Mo. App. 582; In re Soulard, 141 Mo. 664; Zeideman v. Molasky, 118 Mo. App. 119; Wynn v. Cory, 48 Mo. 346. (3) The evidence is clear, explicit and convincing, not only as to the existence of the trust, but as to its terms and conditions; therefore sufficient within the rule, even without the aid of statute. Northrip v. Burge, 255 Mo. 654; Carroll v. Woods, 132 Mo. App. 501; Darling v. Potts, 118 Mo. 529; Childs v. Western Cemetery Assn., 4 Mo. App. 85; Triby v. Pease, 240 Ill. 513; Laun v. Sabbath, 208 Ill. 401. (4) But under the statutes, the Married Women's Acts, adopted in 1875, James C. Ghio could acquire no title to his wife's estate of inheritance, either by parol gift, or by a reduction of the same to his possession with her written consent. R. S. 1909, sec. 8309; McGuire v. Allen, 108 Mo. 409; Jones v. Elkins, 143 Mo. 651; Winn v. Riley, 151 Mo. 66; Haguewood v. Britain, 273 Mo. 89; Craig v. Bradley, 153 Mo. App. 592. (5) By force of these statutes, a reduction to his possession of appellant's estate of inheritance, without her written consent that such possession be for his own use and benefit, constituted him her trustee, and he held the legal title in trust as her separate property. Holman v. Holman, 183 S. W. 623; Sedy v. Hesse, 123 Mo. 450; Scrutchfield v. Sauter, 119 Mo. 615; Murry v. King, 153 Mo. App. 716; Harris Banking Co. v. Miller, 190 Mo. 664, 669; In re Estate of Soulard, 141 Mo. 662; First Natl. Bank v. Moss, 80 Mo. App. 408; Dawes v. Dawes, 116 Ill. App. 36; Dibert v. D'Arcy, 248 Mo. 647; Huetteman v. Viesselmann, 48 Mo. App. 582; Deal v. Mississippi Bank, 79 Mo. App. 262; Walker v. Beal, 9 Wall. 743, 19 L. Ed. 814; Long v. Martin, 152 Mo. 668, 678. (6) Since this is an express trust, the Statutes of Limitation have no application. Watson v. Payne, 143 Mo. App. 728; Cantwell v. Crawley, 188 Mo. 57; Phillips v. Jackson, 240 Mo. 337; Murry v. King, 153 Mo. App. 718; 2 Perry on Trusts (5 Ed.) sec. 863; Condit v. Maxwell, 142 Mo. 277; Riddle v. Whitehill, 135 U. S. 621, 34 L. Ed. 282; Speidel v. Henrici, 120 U. S. 377, 30 L. Ed. 718. (7) Since it is a trust in personal property, the

Statute of Frauds does not apply. Citizens Bank v. Mc-Kenna, 168 Mo. App. 254, 257; Martin v. Martin, 250 Mo. 539; Harris Banking Co. v. Miller, 190 Mo. 640, 664; Carroll v. Woods, 132 Mo. App. 492; Zeideman v. Molasky, 118 Mo. App. 106, 118; Watson v. Payne, 143 Mo. App. 721. (8) Since certain of the estate passing into the hands of the executors was purchased with these trust funds, appellant's right to follow her money was not that character of claim which had to be presented for allowance in the probate court; that court had no jurisdiction to grant her the relief to which she was entitled. Roach v. Caraffa, 85 Cal. 444; Fish v. Lightner, 44 Mo. 271; Patterson v. Booth, 103 Mo. 419; Wyatt v. Wilhite, 183 S. W. 1107; Storey's Equity Juris. (13 Ed.) sec. 465. (9) Nor is she debarred from following the trust fund into the real estate, because it was a trust in personal property, which may be followed when invested in land. Roach v. Caraffa, 85 Cal. 436; Freeman v. Maxwell, 262 Mo. 21; Patterson v. Booth, 103 Mo. 413. (10) Property affected with a trust, passes, on the death of the trustee, to his heirs affected with the trust. Paul v. Fulton, 32 Mo. 117. (11) The appellant was a competent witness for all purposes, except as to communications from her husband; and her testimony as to the amount of her inheritance, and that she delivered same to her husband, and appointed her husband her agent for its care and investment, was competent, and should have been admitted. Curry v. Stephens, 84 Mo. 442; Scrutchfield v. Sauter, 119 Mo. 625; Pace v. Railroad, 175 Mo. App. 233; Loomis v. Met. St. Ry. Co., S. W. 143. (12) The will shows an intention of the testator to provide for his wife a livelihood in the family homestead, in the manner that he would have provided for her support and maintenance during life; the term "net" is a mere mercantile term, expressing value after deducting tare and expenses; and the use of the word does not show an intention to impose upon the beneficiary the burden of all expenses, and leave her without support. Andrews v. Boyd, 5 Me. 202; Leach v. Cowan, 125 Tenn. 198. (13) The amount payable to the bene-

ficiary, as income, not being specified in the trust, the refusal of the trustee to provide for payment of any income is an abuse of discretion, and the amount payable may be fixed by the court.  Saydell v. Hurck, 72 Mo. 257; Bundy v. Bundy, 47 Barb. (N. Y.) 135; Matter of Van De Car, 49 Misc. (N. Y.) 39; Reeve v. Beekman, 42 N. J. Eq. 613; Lehnard v. Specht, 180 Ill. 208, 214; 2 Perry on Trusts (6 Ed.), sec. 511a.

*Bryan, Williams & Cave* for respondents.

(1)  If counsel for appellant are claiming an equitable lien on, or any interest in, the lands of the trust estate, the death of Mrs. Ghio makes it necessary that her heirs (if she died intestate) or her devisees (if she died testate) should as such be made parties to this cause. Overshiner v. Britton, 169 Mo. 341.  (2)  The interpretation of the will by the lower court was clearly correct. Appellant was not entitled to receive any payments in excess of the net income of the trust estate.  (a) The provision of the will as to the payments which his wife was entitled to receive out of the trust estate is: "Said trustee shall pay to my beloved wife, Margaritta Ghio, the whole of the net income from said trust estate, so long as she lives" (b) Net income of the trust estate means the income remaining in the hands of the trustee after payment out of it of interest on incumbrances, proper repairs, taxes and other proper expenses incurred by the trustee in the management of the trust property.  29 Cyc. 671; Hildenbrandt v. Wolff, 79 Mo. App. 333; Perry on Trusts (6 Ed.), secs. 552, 554; Reyburn v. Wallace, 93 Mo. 326; Oellien v. Galt, 150 Mo. App. 537; Denvir v. Park, 169 Mo. App. 335; N. Y. Life Ins. Co. v. Sands, 53 N. Y. Supp. 320; Hemphill's Est., 180 Pa. 95.  (c) Under the general obligation of carrying the trust into execution, trustees and all fiduciary persons are bound in the first place to conform strictly to the direction of the trust.  Shelton v. King, 229 U. S. 90; Newton v. Rebenack, 90 Mo. App. 650; Murphy v. Delano, 55 L. R. A.

727; Pomeroy's Eq. Jurisprudence (4. Ed.) sec. 1062; Upham v. Plankinton, 152 Wis. 275, Ann. Cas. 1914C, 380. (3) The testimony of Mrs. Ghio, that she employed a lawyer to look after her interests in her brother's estate, and testimony as to how much money she inherited from relatives in Germany, was irrelevant, and objection to such evidence was properly sustained. Reed v. Sperry, 193 Mo. 167. (4) Testimony of Mrs. Ghio as to how much of such money she turned over to Mr. Ghio was incompetent and was properly excluded, as Mr. Ghio, the other party to the transaction, was dead, and for the further reason that it was a privileged communication between husband and wife. R. S. 1909, secs. 6354, 6359; Terry v. Glover, 235 Mo. 544; Edmonds v. Scharff, 213 S. W. 823; Smith v. Smith, 201 Mo. 533; Sitton v. Shipp, 65 Mo. 297; Ables v. Ackley, 133 Mo. App. 594. (5) If, as appellant claims, Mr. Ghio was trustee of an express trust, then insofar as it relates to the Taylor Avenue real estate, such claim must fail, since it relates to lands and it is "not manifested and proved by some writing signed by" Mr. Ghio. Such a trust could not be proved by parol testimony. R. S. 1909, sec. 2868; Heil v. Heil, 184 Mo. 665; Bender v. Bender, 220 S. W. 929; Curd v. Brown, 148 Mo. 82; Hillman v. Allen, 145 Mo. 638; Shelton v. Harrison, 182 Mo. App. 404. (6) If it was the intention of the appellant to claim under a resulting trust, the law is that it cannot be established except by testimony so cogent, clear, strong and unequivocal as to banish every reasonable doubt from the mind of the chancellor respecting the existence of such alleged trust. Such evidence is wholly wanting in this case. The testimony of verbal admissions of persons since dead is entitled to small weight. Johnson v. Jameson, 209 S. W. 919; Curd v. Brown, 148 Mo. 82; Reed v. Sperry, 193 Mo. 167; Gammage v. Latham, 222 S. W. 469; Green v. Cates, 73 Mo. 115; Bender v. Bender, 220 S. W. 929; Hillman v. Allen, 145 Mo. 638. (7) Even if appellant could successfully claim that this were a resulting trust, still, since, if appellant's contention is correct, it must have been created

in the year 1893, more than twenty-five years prior to the institution of this suit, it is now barred by the Statute of Limitations. R. S. 1909, sec. 1879; Sec. 1881 as amended by Laws 1917, p. 205; Smelser v. Meier, 271 Mo. 178; Reed v. Painter, 145 Mo. 341; Burdett v. May, 100 Mo. 13; Ricords v. Watkins, 56 Mo. 553. (8) The prayer in the second count of appellant's petition seems to be inconsistent with any claim for either an express trust or a resulting trust, and would indicate that she sued for a money judgment and claims that it should be secured by an equitable lien on the TaylorAvenue property. 25 Cyc. 662; Pomeroy's Equity Jurisprudence (4 Ed.) sec. 1233. (9) As to appellant's claim with respect to the money alleged to have been mingled with the general assets of Mr. Ghio's estate, it is not even contended that it is a claim against any specific property; it is merely contended that it is a claim for money against the general estate which Mr. Ghio left at the time of his death. (a) There was no showing whatever that any such money went into any of the property or assets which passed to the trustee, or in any way swelled such assets, and the claim of appellant cannot stand. Real Estate Co. v. Robinson, 199 Mo. App. 515; Pearson v. Haydel, 90 Mo. App. 253. (b) This claim, if it ever accrued, accrued more than ten years prior to the institution of this suit, and it, as well as the claim with respect to the Taylor Avenue property, is barred by the general Statute of Limitations. Neither the claim last mentioned nor the claim with respect to the moneys alleged to have been used in the improvement of the Taylor Avenue property was ever exhibited to the executor of Mr. Ghio's estate or presented to the probate court, and insofar as they are claims against the general estate of Mr. Ghio they are, therefore, barred by the Statute of Non-Claim, Art. VII, Chap. II, R. S. 1909. Beekman v. Richardson, 150 Mo. 430; Woerner on American Law of Administration (2 Ed.), 848; 18 Cyc. 467, 417; Stewart v. Thomasson, 94 Ark. 60; Atty. Gen. v. Brigham, 142 Mass. 248; Morgan v. Hamlet, 113 U. S. 449; Patterson v. McCann, 39 Ark.

577; Trecothick v. Austin, 4 Mason, 16; Marker v. Van Gerpen, 166 N. W. 151; Hoffman v. Hoffman, 126 Mo. 486; Hammons v. Renfrow, 84 Mo. 332; McKee v. Allen, 204 Mo. 655.

DAVID E. BLAIR, J.—This is an action seeking the construction of the will of James C. Ghio, deceased, and the establishment of a trust as to a portion of his estate.

In the amended petition on which the cause was tried below Rebecca M. Ghio was named as plaintiff and all the other parties to the case were named as defendants. The trial court found for the defendants on both counts of the petition and dismissed the bill, and Mrs. Ghio appealed. Since the appeal was taken the death of Mrs. Ghio on December 11, 1920, has been suggested, and the cause was revived in the name of her executor, Isaac H. Orr, Said executor has duly entered his appearance herein and has been substituted as appellant. On January 24, 1921, the parties hereto filed their stipulation showing a state of facts upon which they have agreed that certain original defendants and heretofore respondents may be permitted to withdraw as respondents in this court and be made co-appellants with said Issac H. Orr, executor. Such substitution is ordered made in accordance with that stipulation.

The parties to the case are now arrayed as follows: Isaac H. Orr, executor of the estate of Rebecca M. Ghio, deceased, Elizabeth McMenamy, John B. Ghio, Olivia M. Dunn and J. C. Martin Ghio (children of Mrs. Ghio) are appellants, and St. Louis Union Trust Company (hereinafter referred to as Trust Company) and Joseph A. McMenamy, Freeland J. Dunn, Elsie K. Ghio and Mathilda C. Ghio (the husbands and wives of the respective children) and Evelyn Garth McMenamy, Adrian McMenamy, Walter Bowles McMenamy, Mary Renee Ghio, Rodes Garth Dunn, Virginia Lee Dunn and Mary Louise Ghio (grandchildren of James C. and Rebecca Ghio) are respondents. James C. Ghio will be hereinafter referred to as testator.

Testator and Rebecca M. Ghio were man and wife and lived for many years in St. Louis County at "Tranquilla," their country home. Testator was a man of wealth and provided for his family accordingly and the country home was splendidly maintained and members of his family were permitted to travel extensively. Much of his wealth was inherited. The value of his estate does not appear. Two sons and two daughters were born of the marriage between testator and his wife, and survived testator.

Mrs. Ghio inherited large sums of money from the estates of her father and a half brother in Germany. The proceeds of these estates were remitted to her from time to time between 1892 and 1906 by one Bruhn, her attorney in Germany. It was contended by Mrs Ghio that these remittances amounted to $104,500. The proof of the exact amount rested in letters from said Bruhn. These letters were not admitted in evidence by the trial judge. From proof of statements and admissions of testator it appears that a total sum of about $100,000 was so received. Testimony of the children of testator tends to show that as these remittances were received Mrs. Ghio turned them over to testator for investment on her account, and it was her contention, and is now the contention of her executor, that testator received these funds from her as trustee of an express trust.

Testator died February 2, 1914, and left a will by which he made certain specific bequests, and devised and bequeathed the residue of his estate to the St. Louis Union Trust Company of the City of St. Louis in trust. The provisions of said will, so far as necessary to an understanding of the case, are as follows:

"Fourth. I hereby give, devise and bequeath all the rest and residue of my property, of every kind and character, and wheresoever situated, to the St. Louis Union Trust Company, as trustee, in trust, and upon, to and for the uses, purposes and trust hereinafter declared; and I hereby authorize and empower said trustee to invest, reinvest and make changes of investments of the principal

of the trust estate hereby created, and to make investments thereof in real and personal estate, as it shall deem for the best interests of said trust estate, so as to derive income therefrom and thereon. In making sales, or leases for longer periods than ten years, of real estate, I wish said trustee to consult my wife and son John B. Ghio, if both are living, or the survivor of them after the death of one, and to make such sales or leases with their written consent, which written consent may be by their joining in conveyance or lease, as the case may be, or in and by a separate instrument attached to and made part of such conveyance or lease, respectively. Said trustee shall pay to my beloved wife, Rebecca Margaritta Ghio, the whole of the net income from said trust estate, so long as she lives; after her death, in equal shares, to my children, so long as my children, or any of them, remain alive. If any of my children die during the continuance of this trust, leaving a child or children them surviving, his or her child or children, respectively, shall take the parent's place and share in equal parts. This trust shall continue for the full term of the life of my said wife and of the last survivor of my children and *pro tanto* during the minority of any child or children of any of my children who shall die leaving a child or children them surviving.

"Upon the death of my wife and the last survivor of my children, leaving a child, children, or other descendants of any of my children them surviving, the property then composing the trust estate, principal as well as interest, shall go to and become the property of such child, children, or other descendants of my children, in equal shares, share and share alike, *per stirpes* and not *per capita;* this trust to cease *pro tanto* as to the shares of any who are of age, and the property composing such shares, principal as well as interest, to be paid to them freed from trust; the shares of any who are minors to remain in trust until, and such trust to cease *pro tanto* when and as each child, or other descendant, of my said children becomes of full age, as to his or her share, and his or her share, principal and any unexpended income,

to be paid over to him or her, freed from trust; the shares of any who are minors to remain in trust and be paid over to them, respectively, when and as they arrive at full age. During minority the trustee shall have the power to expend shares of income which any minor shall be entitled to as a beneficiary under this will, for the support and education of each minor. If such share of income for any minor is more than shall be necessary for the support and education of such minor, after supporting and educating him or her, the remainder of his or her share shall be accumulated for his or her benefit and paid over to him or her when and as he or she becomes of full age. Payments of income to every beneficiary hereunder of full age shall be made in equal monthly portions, so nearly as possible, and so nearly as practicable on the first day of each month. No advancement, nor any other payment, shall be made to any beneficiary except of net income, and that only after the same has been received by the trustee, and no beneficiary shall have power to anticipate such income, or to in any manner whatever incumber the same, or the principal of any portion of the trust estate, and shall not have title to either income or principal except and only when and as the same shall have been actually received by the beneficiary from the trustee. . . .

"Sixth. I hereby declare that the provision for my wife made in and by this will is to be in lieu of dower and any and all other statutory rights whatsoever.

"Seventh. The trustee appointed in and by the fourth paragraph or item of this will, is hereby authorized, in lieu of paying her income thereon or therefrom, to permit my wife, if she shall so desire, to reside rent-free at my home place in St. Louis County, Missouri, and to assist her, as far as possible, in keeping and maintaining it in the same condition I would keep and maintain it if alive."

By said will said Trust Company was also named as executor. Said will was filed for probate February 28, 1914. Letters testamentary were issued to said Trust Company as executor March 3, 1914, and notice of is-

suance of such letters was published within thirty days thereafter. Said Trust Company took charge of said estate as executor under the will and duly administered the same and made its final settlement and was discharged as such executor October 17, 1915. The estate has ever since been in the hands of said Trust Company as trustee under said will. No claim on account of alleged trust funds of Mrs. Ghio was presented against said estate prior to the final settlement in the probate court.

It appears that the gross income from said estate; net income and amounts paid to Mrs. Ghio from about May, 1914, to and including the year 1918, are as follows:

| Year | Gross Income | Net Income | Paid Mrs. Ghio |
|---|---|---|---|
| 1914 (in part) | $ 9,230.85 | $ 6,641.12 | $ 6,100.00 |
| 1915 | 18,367.56 | 5,267.87 | 7,200.00 |
| 1916 | 17,380.64 | 1,453.54 | 7,200.00 |
| 1917 | 15,902.52 | 5,045.90 | 23.00 |
| 1918 | 15,873,31 | 1,628.68 | 00.00 |
| | | $20,037.11 | $20,523.00 |

The par value of the personal property of testator's estate at the time of the trial in May, 1919, was approximately $71,000. The actual value thereof was about $35,000. The bulk of said estate consists of real estate, a great portion of which is unproductive. Apparently some incumbrances existed. The expenses of the estate are very large in proportion to the income therefrom. Such expenses include general and special taxes, interest, insurance and repairs.

The case was tried on plaintiff's amended petition, hereafter referred to as "petition." Said petition is in two counts. The first count alleges the relations existing between testator and plaintiff and names the children and grandchildren, alleges the death of testator, sets out his will, describes the real and personal property constituting the estate, alleges that it was the intention of testator to cause to be paid to plaintiff the whole of the net income from the trust estate and that she should be provided from said estate "with sufficient income and

means so as to provide for her maintenance and livelihood in comfort and in accordance with the manner of living to which she has been accustomed as the wife of said deceased and in keeping with her station in life." Said petition alleges that the trustee has failed to agree with plaintiff as to the amount she is entitled to receive from the estate for such purpose and that it has failed and refused to pay her sufficient sums therefrom, "the said trustee maintaining that the plaintiff is entitled to receive only such sums as it shall determine to be net proceeds from the income of said trust estate, and that no sums sufficient for said purpose are earned by the principal of said trust estate."

The prayer of said first count is for the construction of said will and a determination of the amount which plaintiff is entitled to receive from said estate and for a direction to the trustee to pay such amount to the plaintiff.

In the second count plaintiff adopts the first paragraph of the first count; alleges the receipt of sums exceeding $84,000 from the estates of her father and half-brother in Germany and the turning over of same to testator "under an agreement entered into between her and her said husband that the same would be received by him, preserved, cared for and invested for the use and benefit of the plaintiff and as her agent and trustee for said purpose;" alleges that testator then owned a certain lot on North Taylor Avenue in the City of St. Louis, and without plaintiff's consent in writing so to do testator expended about $80,000 of plaintiff's said money in the erection of improvements on said Taylor Avenue property and that said testator owned said Taylor Avenue property at his death and that the same is part of the trust estate now in said trustee's hands; that the equitable title to the buildings on said Taylor Avenue property is in plaintiff; that neither testator nor his trustee has ever accounted to plaintiff for any rents and profits therefrom, and that plaintiff is entitled to a lien on said real estate and improvements thereon for the amount of her

funds invested therein and to an accounting for such rents
and profits; that additional sums aggregating about
$20,000 received by plaintiff from the said estates in
Germany were turned over by her to testator for care
and investment for her use and benefit and that testator
"so mixed all of said money with his own, that it cannot
be distinguished, and that said sum of $20,000 was in-
vested by said James C. Ghio with his own money, and
that he earned at least six per cent interest per annum
thereon, which, together with said sum of $20,000 prin-
cipal, went into the assets of said estate upon his death
and to the extent thereof increased the same and came
into the possession of the defendant, St. Louis Union
Trust Company, trustee."

Said second count then describes property owned
by the testator at his death. The prayer of the second
count is for a lien on the Taylor Avenue real estate and
improvements and for an accounting by the estate of
James C. Ghio, deceased, and the trustee for rents and
profits from said Taylor Avenue property and for judg-
ment for $20,000 with six per cent interest for the por-
tion of her trust funds alleged to have been mingled with
the assets of testator, said judgment to be a lien upon the
other real estate of the testator in the City of St. Louis
and for other relief.

The answer of the defendants Walter Bowles Mc-
Menamy, Adrian McMenamy, Mary Renee Ghio, Rodes
Garth Dunn, Virginia Lee Dunn and Mary Louise Dunn
(all minors and grandchildren of testator), by their
guardian *ad litem,* admitted that plaintiff is the widow
of testator and that the testator left the will set out in
the petition and that defendant Trust Company qualified
as executor and as trustee has taken possession of the
property and said answer contained a general denial
and calls for strict proof.

The joint answer of the children of testator and
their husbands and wives and of the grandchild Evelyn
Garth McMenamy admitted the trusteeship of the Trust
Company, the relationship of the parties as alleged in

the petition and the will as set out in said petition and that same was duly filed and probated; that the trustee has possession of the property described in the petition; the marriage of plaintiff and testator and that they lived in comfort befitting their station in life; that the trustee failed and refused to agree with plaintiff as to the amount of money she was entitled to receive from said estate and has failed to pay plaintiff sufficient money to enable her to live in comfort according to her station in life as intended by testator. They allege a willingness that the will should be construed as prayed for by plaintiff in the first count of the petition and that she have the relief therein prayed for.

As to the second count said defendants admit the receipt by plaintiff of the sum of $80,000 as her inheritance and that the sum was delivered into the possession of testator for investment for her use and that without her written consent the same was invested in his own name, but whether invested in the Taylor Avenue property said defendants do not claim actual knowledge, but admit that said property stood in testator's name at the time of his death and is now in the possession of the trustee. Said defendants consent that the right, title and interest of the plaintiff in said property be ascertained, defined and established by decree of court.

The answer of the St. Louis Union Trust Company admits that it is the trustee duly qualified and acting, relationship of the parties as alleged in the petition, the filing and probate of testator's will; that said defendant qualified and acted as executor; that as trustee it took possession of all property of the estate; that it has possession and control of all property described in the petition, except certain tracts set out in its answer; alleges that the present value of the personal property is $35,-000; admits the marriage of plaintiff and testator and that they lived together in the enjoyment of an income enabling them to live in comfort and according to their proper station in life; denies that it was the intention to create a trust estate to provide for plaintiff's main-

tenance and livelihood in comfort and in accordance with the manner of living to which she had been accustomed as the wife of testator; admits that it has failed and refused to pay her sums sufficient to enable her to live in comfort and in accordance with her station in life; that it claims plaintiff is entitled to receive only such sums as it shall reasonably determine to be net income; that all the income has been and is needed to pay proper charges of the trust estate; denies that its action is contrary to the purposes and intent of the testator as expressed in his will.

As to the second count said trustee denies knowledge of the existence of plaintiff's separate estate or the truth of the allegation that the same was turned over to the testator to be kept and preserved for her and that the same was invested in property standing in testator's name without plaintiff's consent in writing, and demands strict proof of such allegations, and makes general denial of all allegations not admitted.

Said trustee further answering alleges the death of testator, filing and probate of his will, issuance of letters testamentary thereon, publication of notice thereof, final settlement of said estate, discharge of said defendant as executor; that the claim contained in the second count of the petition was not exhibited against said estate during such administration and that it is therefore barred by the provisions of Chapter 2, Article VII, Revised Statutes 1909, because it was not presented for allowance as a claim against said estate.

Further answering said defendant denies that the funds of plaintiff mentioned in the second count were turned over to testator or, if so, not within ten years prior to the institution of this suit and that said claim is barred by the Statute of Limitations.

Plaintiff filed reply denying the new matter not admitted in said reply. The reply denies that the claim is barred, and avers that the testator held and had possession of her separate estate as her agent and express trustee, and that as such trustee he never denied the

said trust or refused in any manner whatsoever to recognize plaintiff's rights therein.

The first count of the petition asks for a construction of the testator's will to ascertain and declare the amount Mrs. Ghio is entitled to receive from the trust estate and that the Trust Company be required to pay her such amounts as she is entitled and will be entitled to receive. By reason of her death since the trial below, the question of provision for the future of adequate support for her from the trust estate is effectually disposed of. But the meaning of the term "net income" still remains for consideration.

The propriety of certain expenditures by the Trust Company, in meeting assessments for special tax bills and in making improvements to real estate permanent in their character, is still involved, as the present beneficiaries are interested in the correctness of such charges as they may occur in the future, and Mrs. Ghio's executor is interested in improper expenditures of that sort, if any, heretofore made by the Trust Company. The children of testator and Mrs. Ghio have now succeeded to her estate for the period of their lives, under the terms of testator's will, and their respective children succeed them as beneficiaries until the death of the last surviving child of testator and Mrs. Ghio. Unless items for special assessments for sewers and for reconstruction of destroyed buildings are so regarded, the record discloses no expenditures by the Trust Company not properly chargeable by it in performing its duty as trustee. It is incumbent upon testator's trustee, under the provisions of the will, to preserve the property intact and to keep it in such shape that it will produce earnings. If liens for public improvements are suffered to be enforced the property cannot be kept intact, and if destroyed buildings are not replaced the earnings necessarily will be reduced. The cost of permanent improvements to real estate benefiting both the life estate and the remainder and the amount of special taxes for public improvements chargeable a-

gainst such real estate and likely to outlast the life estate should be apportioned between the life tenant and the remaindermen. [16 Cyc. 634; 21 C. J. 957; Reyburn v. Wallace, 93 Mo. 326; Bobb v. Wolff, 54 Mo. App. 515; Construction Co. v. Withnell, 190 Mo. App. l. c. 42.]

But we do not understand that the trustee is liable to the life tenant for the payment for such purposes made by it out of gross income from the trust estate. The primary liability is on the life tenant, at least to the full extent of the income. The apportionment of the cost is a matter of contribution between the life tenant and the remaindermen. It was the clear duty of the trustee to preserve the property intact before paying any income to the life tenant. Therefore neither Mrs. Ghio nor her executor had or have any just claim against respondent trust company on that ground, and the construction of the will for the future support of Mrs. Ghio having become unnecessary by reason of her death, it follows that the judgment of the trial court should now be held to be correct.

In the second count of the petition an accounting is sought for money alleged to have been turned over by Mrs. Ghio to testator as her agent and trustee for investment for her benefit. The evidence is not very clear and definite as to the amount of the sums so turned over to testator. The uncontradicted testimony tends to establish an oral agreement on testator's part to handle Mrs. Ghio's inheritance as her agent and trustee. That the amount was in the neighborhood of $100,000 appears reasonably clear. The showing in the record before us as to the use of Mrs. Ghio's money made by testator is exceedingly vague. The petition alleged that approximately $84,000 went into improvements on the Taylor Avenue property, the title to which stood in testator's name. But the proof unsatisfactorily indicates that not over $25,000 of Mrs. Ghio's money went into this property. The petition alleges that the balance of her money, some $20,000, went into various mortgages and other investments and was mingled with testator's prop-

*Trust Fund.*

erty and to that extent increased the value of his estate. If only $25,000 of Mrs. Ghio's money went into the Taylor Avenue property, the conclusion that the remainder went into the other investments is fairly deducible from the evidence.

Since Mrs. Ghio is now dead and her testimony as to the turning over of money by her to testator is no longer available, the question of her competency as a witness is of little importance upon a retrial of the case. It is sufficient to say that we are of the opinion that she was not a competent witness on this question, because the turning over of the money to testator was one of the facts tending to prove the contract between her and testator and his death sealed her lips also. While the letters from Bruhn, her German lawyer, with proof that they contained remittances, tended to show the amount of her inheritance, they were not in themselves competent to show the amount turned over by her to testator without further proof tending to charge testator with the amount of the remittances said to have been contained in such letters.

*Widow as Witness.*

*Letters.*

The uncontradicted testimony of some of testator's children tends to show that testator admitted having received for investment from Mrs. Ghio approximately $100,000. Delivery of her separate property to her husband did not divest her of separate ownership therein in the absence of proof of her written consent. [Sec. 8309, R. S. 1909.] The fact that this money, the separate personal property of his wife, was received by testator and accepted by him as the agent and trustee of his wife to be invested for her benefit may be established by parol testimony. This is well settled. [Harris Banking Co. v. Miller, 190 Mo. 640-663; Northrip v. Burge, 255 Mo. 641-654.]

*Admissions.*

The object, the subject, the terms and the conditions of the trust are shown with sufficient definiteness by the testimony of testator's children. The amount received by him is not definitely shown, but it fairly appears to

**Resulting Trust.** have been approximately $100,000. On a retrial a more definite showing in that regard may possibly be made. We are satisfied that no resulting trust arose in the Taylor Avenue property. That property was not purchased with Mrs. Ghio's money. The testimony shows an express trust as to whatever part of her money went into the Taylor Avenue property. The Statute of Limitations would not run against a claim by Mrs. Ghio until her trustee repudiated her **Limitations.** interest as *cestui qui trust* with notice to her. No such repudiation is shown to have occurred. [Watson v. Payne, 143 Mo. App. 721-728; Butler v. Lawson, 72 Mo. 227; 2 Perry on Trusts (5 Ed.) sec. 883.]

Mrs. Ghio's claim involved the establishment of a trust and an accounting, matters of an equitable nature, and therefore not cognizable before the probate court **Estate Demand.** in the administration proceedings and such claim is not barred by her failure to exhibit her claim in said court against testator's estate. [Butler v. Lawson, 72 Mo. 227, 1. c. 245; Scudder v. Ames, 89 Mo. 496, 1. c. 521; McKee v. Allen, 204 Mo. 665, 1. c. 675; Jenkins v. Morrow, 131 Mo. App. 288; Brewing Co. v. Steckman, 180 Mo. App. 320-325.]

Respondent trust company contends that, except for the indefinite showing that part of Mrs. Ghio's money went into the Taylor Avenue property, the record fails to follow any of her funds, and that it is not shown that such funds swelled the assets that passed into its hands **Commingling Fund.** as trustee, and that therefore no trust can now be established as against such estate, and that plaintiff is not entitled to an accounting. It would indeed be strange doctrine that a trustee can accept money or other property in trust and by commingling such property with his own in hopeless confusion defeat the very object and purpose of the trust. Such a rule would violate one of the cardinal principles of the law, that no man may take advantage of his own wrong. Mrs. Ghio's money went into testator's

hands. There is no evidence of its repayment or any accounting in relation to it. Her funds are not shown to have been lost by bad investments or in any manner for which her trustee may be regarded as discharged. In the absence of some showing, the presumption will be indulged that those funds retained their trust character in testator's hands and remained in his hands until his death and that his trustee received his estate swelled by the amount of such trust funds. The Trust Company as testator's trustee is therefore chargeable with accountability for such trust fund and the earnings therefrom to be satisfied out of the estate in its hands.

An attempt has been made to show that a portion of Mrs. Ghio's trust funds went into certain investments. If the evidence clearly shows that a definite amount went into any particular property, such as the Taylor Avenue property, an equitable lien against such property may properly be decreed; but we are persuaded that as to such part of her trust funds as were mingled with testator's general property and cannot now be traced, his entire estate is liable in the hands of his trustee and such estate should be subjected to a full accounting for the same. [Harrison v. Smith, 83 Mo. 210; Stroller v. Coates, 88 Mo. 514, l. c. 521; Pundmann v. Schoenich, 144 Mo. 149, l. c. 155; Tufts v. Latshaw, 172 Mo. 359, l. c. 373.]

Respondent trust company contends that the claims of plaintiff in the first and second counts of the petition are inconsistent; that in the first count Mrs. Ghio treats the trust as valid and in the second count she

Inconsistent Demands.

claims that a portion of the supposed trust estate, amounting to $104,000, together with rents and profits thereon, was not the property of the testator at all; that she accepted the benefits made for her under the provisions of the will, and should not now be heard to claim that such portion of the estate does not properly belong to the trust estate; that she has elected to take under the will by her conduct and must be held to be bound by such election.

To support this contention a line of cases and expressions by eminent law-writers are cited for our consideration, but an examination of these will show that the principles there laid down do not apply here. Where a will or other instrument undertakes to make disposition to others of property belonging to any person and by the same instrument such person receives property belonging to such other persons, such person cannot retain the property of such others and complain of the disposition of his own property to them, and having accepted the property belonging to such other persons may be said to have elected to take under such instrument. Here Mrs. Ghio has received nothing belonging to her children. All of the net income from the trust estate— much or little—was by the terms of the will payable to her during her life. Her claim that a portion of the estate devised by testator's will consisted of property held by him in trust for her does not place her in the attitude of accepting benefits to the disadvantage of others while she contends for her own property. If that net income has been increased by reason of her own separate property being treated as part of her husband's estate, they have not been injured thereby. The subsequent beneficiaries and remaindermen are not put to any disadvantage they would not have suffered anyway had she repudiated her husband's will the very day it was filed for probate.

Eminent authority for this conclusion is found in the case of Walker v. Walker, 9 Wall. (76 U. S.) 743. In that case it was contended that the widow by accepting the provisions of her husband's will, waived her right to institute the suit which was brought to charge the estate in the hands of her deceased husband's executors with a trust in her favor. In that case, as in the case at bar, the husband had made a limited provision for his wife and had declared in his will that such provision was to be received in lieu of dower. Mr. Justice Davis said: "But if this defense is overruled, it is nevertheless contended that Mrs. Walker, by accepting

the provisions of her husband's will, waived her right
to institute this suit; but this is giving an effect to the
acceptance not warranted by the terms of the will, or
anything connected with the case. Dr. Walker in his
will saw fit to make a limited provision for his wife, and
to declare that it was to be received, with the income
under the trust deed, in full satisfaction of dower in his
estate. Nothing is said about the other trust under
which he received the separate property of his wife to
be invested, and it is hard to see how his estate can be
released from accounting for it, or the *status* of the com-
plainant affected, because she consents to take under the
will what is given her in satisfaction of dower.

There is no merit in the suggestion that the bene-
ficiaries under Mrs. Ghio's will should be brought in as
parties since her death. Whatever recovery her execu-
tor, the substituted appellant, may succeed in making
Parties. will be part of the money due her estate and as
such her executor will be rightfully empowered
to receive it and distribute it under the authority of the
probate court. [Sec. 93, R. S. 1919.] Appellant exec-
utor has offered to produce Mrs. Ghio's will in this court
in order to show that her beneficiaries are already par-
ties to the instant action, but the view above expressed
makes it unnecessary to consider the effect or propriety
of such offer.

In this character of cases this court has the undoubt-
ed power on appeal to render such judgment as the trial
court should have rendered and it is our duty to do so
when it can be done; but the record is not in such shape
as to enable us to render the proper judgment. Further
evidence touching the issues involved in the second count
may be procurable to throw clearer light on the amount
of Mrs. Ghio's money received by testator, the use he
made of it and what accountings he may have made to
her in his lifetime.

Our conclusion therefore is that the judgment of
the court below on the first count should be affirmed, and
that the judgment on the second count should be reversed

and the case remanded for new trial on said second count in conformity with the views herein expressed and the rules governing accountings between trustees and their *cestui qui trusts.* It is so ordered. All concur.

## ON MOTION FOR REHEARING, TO TRANSFER TO COURT IN BANC AND FOR MODIFICATION OF OPINION.

PER CURIAM:—At the earnest insistence of respondent, St. Louis Union Trust Company, we have again considered the correctness of our ruling that the claim involved in this case was not cognizable before the probate court and therefore is not barred for failure to exhibit the same during the course of the administration of the estate of James C. Ghio, deceased.

Said respondent contends that our opinion is in conflict with State ex rel. Stetina v. Reynolds, 286 Mo. 120, 227 S. W. 47; Hoffman v. Hoffman's Executor, 126 Mo. 486, and Hammons v. Renfrow, 84 Mo. 332. An examination of those cases shows that only direct demands for money judgments were therein under consideration, the same to be satisfied out of the personal property of the estate, and only to be satisfied out of the real property in case the personal property proved insufficient. No question of following a trust fund into specific real estate and establishment of lien therein for a portion of the trust fund was involved in either of the cases. The cases may thus be distinguished from the case at bar. It is true, language is used in one or more of the cases above referred to indicating that the jurisdiction of the probate court is broad enough "to include all money demands of whatever nature, whether legal or equitable," so long as the claim is based on a demand against the estate of a deceased person. But the facts in those cases did not call for any such sweeping declaration, and it seems there was no intention thus ruthlessly to sweep aside the rule laid down in the cases cited in our original opinion in this case. In the light of the facts

no conflict appears which requires a transfer of the case to Court in Banc.

Appellants ask a modification of the opinion so as to enter judgment here for a stated amount, a portion of which to be declared a lien on the Taylor Avenue property. The letters from Germany are the basis of appellants' calculations in arriving at the amount suggested. We have already held that these letters are not sufficient *in themselves* to show that Mr. Ghio received the remittances mentioned therein, and that further evidence is necessary to arrive at the amount of money Mrs. Ghio's estate is entitled to receive. There is not sufficiently definite proof in the record to enable us to render judgment here as suggested. A retrial will doubtless largely clear this up and in that event judgment should be rendered for plaintiff for whatever amounts James C. Ghio received from his wife as her agent and trustee, plus the lowest legal rate of interest thereon from the date or dates when the same were received by him, less any credits to which the evidence now in the record or hereafter introduced may show his estate is entitled.

The motion for rehearing, the motion to transfer the case to Court in Banc and the motion to modify the opinion and to enter judgment are therefore overruled.