MARION FRANCES NELSON, APPELLANT, v. ESTATE OF CLAIR F. MC-CLEAN, DECEASED, GERTRUDE C. BRAND, ADMINISTRATRIX, AND GERTRUDE C. BRAND, RESPONDENTS.—161 S. W. (2d) 676.

Kansas City Court of Appeals. April 6, 1942.

Rehearing Denied May 4, 1942.

*Gillihan & Gillihan* and *Cross & Cross* for appellant.

*Walter Trice* and *John J. Robison* for respondents.

720

SPERRY, C.—Marion Frances Nelson, whom we shall refer to as plaintiff, sued the estate of Clair F. McClean, deceased, Gertrude C. Brand, Administratrix, whom we shall refer to as defendant. Plaintiff sought to impress a trust in her favor as against the assets of said estate in the hands of defendant. Judgment was for defendant and plaintiff has appealed.

Defendant urges that, under our rules, there is nothing before us for review because plaintiff's assignment of error is too general and indefinite and preserves no error for consideration. The assignment of error is as follows: ''The trial court erred in overruling plaintiff's motion for new trial.'' The courts have repeatedly held such an assignment to be too indefinite for consideration. [Shaw v. Am. Ins. Union, 33 S. W. (2d) 1052, 1056; Huber et al. v. Paradise et ux., 101 S. W. (2d) 748, 751.]

In this case, however, in her ''points and authorities'' we think plaintiff states why she complains of the action of the trial court, said that such is a substantial compliance with our rules. [Joslin v. Chicago, Milwaukee & St. Paul Railways Company, 319 Mo. 250, 267.] This is an equity case and, on appeal, is to be considered *de novo*. Voelpel v. Wuensche, 74 S. W. (2d) 14, 19.] In cases tried by the court sitting as a jury, the courts ''are very liberal touching matters of specification of error . . .'' . [Heart of Am. Lumber Co. v. Wyatt Lumber Co., 59 S. W. (2d) 800, 801.] Certainly the courts should be as liberal in equity cases as they are in law cases tried to the court, because in equity cases the entire record, on the facts and the law, is reviewed on appeal, and such judgment is rendered as the record and good conscience supports. We think plaintiff, in her points and authorities, reasonably complies with the rules on this question, especially since this is a ''one point'' case.

This is an equity case and there is no conflict of evidence, such as requires application of the rule, usually followed, that deference should be given to the findings of the chancellor on the facts. [Voelpel v. Wuensche, *supra.*]

Plaintiff is the foster daughter of Nannie Cox McClean and of Clair F. McClean. Nannie Cox McClean died testate, prior to the death of her husband, Clair F. McClean, seized and possessed of certain lands in Kansas. By her will she devised said lands to her husband for life with the remainder to plaintiff. The will also provided that said lands might be sold by her husband and, in that event, that the proceeds thereof should be held and treated just as though such proceeds were real estate.

Thereafter, plaintiff and Clair F. McClean joined in a deed conveying said lands, whereby same were sold for the sum of $915.35 cash, which sum was paid to Clair F. McClean, who deposited it to his personal account in the bank with which he did business, under date of June 25, 1938. On July 9, 1938, Mr. McClean deposited $150 of his

own funds in the same account, to his credit. The record does not disclose the details of withdrawal of the money so deposited, but does show that on August 17, 1938, deceased had on deposit in his account, and to his credit, the amount of $123.48. Therefore more than the amount of the sale price of the land had, at that time, been checked out. McClean did not again marry and, at the time of his death, January 14, 1939, he had on deposit in this account the sum of $24.70, and in another bank the sum of $4.39. These two sums, totaling $29.09, constituted all of the cash that defendant administratrix received into her custody from his estate; but the inventory of the assets of the estate of deceased, filed in probate court under date of January 20, 1939, disclosed that the total value of assets, same being personal property of various kinds, which came into custody of defendant, was $4871.74. No part of the $915.35, representing the proceeds of the sale of the land, was ever paid to or received by plaintiff. Probate records in evidence also established that a semi-annual settlement of the affairs of said estate was filed and approved under date of August 21, 1939, and that defendant charged herself therein with cash receipts, derived from liquidation of assets of said estate, in the amount of $1621.95, and that she took credit for expenditures totaling $237.74, leaving a balance at that time, with which she stood charged, in the amount of $1384.21. From an examination of the inventory and of the settlement it is apparent that defendant had not completed liquidation of assets when said settlement was filed. No demand was ever filed by plaintiff against this estate.

This suit was instituted February 16, 1939, in the circuit court of Clinton county, the home of deceased at the time of death, and the county where administration is being had, for the purpose of establishing that deceased held said sum of $915.35, at the time of his death, as a trust fund for plaintiff. Plaintiff seeks to have the estate funds in the custody of defendant impressed with said trust to the extent of $915.35.

The chancellor rendered a decree denying plaintiff the relief prayed but gave no reason therefor. We shall review the case from the standpoint of the respective positions taken by plaintiff and defendant in briefs herein submitted. Plaintiff contends that she is entitled to the relief sought because the fund received by deceased from sale of the land constituted a trust fund, was in his hands at the time of his death, that it passed into the hands of defendant and swelled the assets of the estate; and that she is entitled to the relief prayed. She contends that it is not necessary, under the modern equity rule, to actually trace the fund into the estate and there identify it under the "earmark doctrine," in order to establish a trust. Defendant says there is no evidence whatever tending to show that said fund "ever reached said estate or came into the hands of the

administratrix," and that the court is and was wholly unauthorized to find for plaintiff. There is no doubt but that Mr. McClean received and held the $915.35 here involved, in trust; that he commingled it with his own money; and that he held it for plaintiff as *cestui que trust*. Defendant does not contend otherwise. The law formerly was that when trust funds had been commingled with other money so that the *cestui que trust* could not identify it, then it could not be recovered in equity. But that rule has long since been abandoned. [Harrison v. Smith, 83 Mo. 210, 217; Stoller v. Coates, 88 Mo. 514, 520; Leonard v. Latimer, 67 Mo. App. 138, 148; Orr v. St. Louis Union Trust Co., 236 S. W. 642, 649.]

The modern rules are stated by TRIMBLE, J., in Horrigan Realty Company v. Flynn, 253 S. W. 403, 405, to be as follows:

"First, which still rests on the former basis, that the owner could recover as owner when it was shown that the trust property or fund, or its substitute, formed an actual part of the total property going into the hands of the assignee or representative, and therefore the amount so received was greater than the same would have been were it not for the existence therein of the trust property.

"Second, that a plaintiff could likewise recover when it appeared that although the trustee had used up or expended the trust property in his business, yet, by reason of such use, the estate going into the hands of the trustee's assignee or representative has been presumptively benefited thereby. The second of these proceeds upon the doctrine that since the trustee's estate has been preserved, enriched, or made better, by the expenditure of the trust fund, equity is accorded the one seeking the restoration of his property and no harm is done to those entitled to the distribution of the trustee's estate, when the amount of the trust fund, at least to the extent of the expenditure resulting in such preservation, enrichment, or betterment, is given to the trust fund's rightful owner."

Plaintiff here relies on her construction of the second of the above stated rules. Said rule, as stated, by TRIMBLE, J., is rested on the holding in Pearson v. Haydel, 90 Mo. App. 253, 261, 262. The latter decision holds, l. c. 264, that: "The rule thus enunciated requires the trust fund or its proceeds to be still mixed with the mass of the insolvent's estate in the hands of his assignee, trustee or other representative, in order for a preferential lien to be declared, and holds that the fact that it was at one time wrongfully mingled with it, is insufficient to authorize a preference."

In Bircher v. Walther, 163 Mo. 461, 467, 469, it was held that the evidence tended to prove that the trust fund had been expended prior to trustee's purchase of certain property which it was sought to impress with a trust, and there was no evidence tending to prove that either the check, or the proceeds, constituting the alleged trust fund, or any part thereof, went into the purchase price of the prop-

erty; and that, therefore, a trust would not be impressed on the general assets.

In Raymuth Real Estate & Building Company v. Robinson, 204 S. W. 276, 280, the St. Louis Court of Appeals follows the ruling of the Supreme Court in Bircher v. Walther, *supra*, and in Pearson v. Haydel, *supra*.

In the case of Beck v. Krembs, 213 S. W. 487, 488, the St. Louis Court of Appeals, again held that since the evidence failed to establish the fact that the trust fund came into the hands of the administrator; and failed to show that same or any part thereof had gone into the purchase of such assets as came into the hands of administrator, plaintiff was not entitled to have a lien or trust impressed against the general assets of the estate.

Plaintiff, however, contends that the facts in Orr v. St. Louis Union Trust Company, 236 S. W. 642, 649, are analogous to the facts here and that the rule there declared governs this case. There the plaintiff, widow of testator, had given into testator's hands $100,000 to be invested for her. After testator's death, and at the time of the trial, it was shown that his estate consisted of real estate, chiefly, and was valued at about $35,000. There was not sufficient evidence from which it could be determined whether or not any of plaintiff's money came into the hands of the executor, or went into the purchase price of any of the assets then held by the trustee who had custody of the estate under terms of testator's will. The Supreme Court there said:

"Respondent Trust Company contends that, except for the indefinite showing that part of Mrs. Ghio's money went into the Taylor avenue property, the record fails to follow any of her funds, and that it is not shown that such funds swelled the assets that passed into its hands as trustee, and that therefore no trust can now be established as against such estate, and that plaintiff is not entitled to an accounting. It would indeed be strange doctrine that a trustee can accept money or other property in trust, and, by commingling such property with his own in hopeless confusion, defeat the very object and purpose of the trust. Such a rule would violate one of the cardinal principles of the law, that no man may take advantage of his own wrong. Mrs. Ghio's money went into testator's hands. There is no evidence of its repayment or any accounting in relation to it. Her funds are not shown to have been lost by bad investments or in any manner for which her trustee may be regarded as discharged. In the absence of some showing, the presumption will be indulged that those funds retained their trust character in testator's hands and remained in his hands until his death, and that his trustee received his estate swelled by the amount of such trust funds. The Trust Company, as testator's trustee, is therefore chargeable with accountability for

such trust fund and the earnings therefrom, to be satisfied out of the estate in its hands.

"An attempt has been made to show that a portion of Mrs. Ghio's trust funds went into certain investments. If the evidence clearly shows that a definite amount went into any particular property, such as the Taylor avenue property, an equitable lien against such property may properly be decreed; but we are persuaded that, as to such part of her trust funds as were mingled with testator's general property, and cannot now be traced, his entire estate is liable in the hands of his trustee, and such estate should be subjected to a full accounting for the same."

The opinion of this court in Talbott v. Stanley, 59 S. W. (2d) 70, 74, was quashed by the Supreme Court in State ex rel. Talbott v. Shain et al., 66 S. W. (2d) 826, 827, because we did not follow the above rule. The Supreme Court held that our opinion was in conflict with that decision. The rule declared in the Orr case is cited with approval by HYDE, C., in Lolorodo v. Lacy, 88 S. W. (2d) 353, 358, but it is not discussed.

Defendant urges that the Supreme Court, in Benz v. Powell, 93 S. W. (2d) 877, 880, in an opinion by TIPTON, J., specifically approves of the rule declared in Bircher v. Walther, *supra*. We so read the opinion; but the court was there considering a case wherein the action was one for discovery of assets and stated that the record did not show that the fund was traced into the hands of *testator* or of the administrator; that there was positive evidence that no part of the funds had been misappropriated; and, (l. c. 881) indicated that the evidence tended to show "all of the trust estate was intact and not mingled with the estate of Powell." That being the state of the record, there was no room for application of the rule of "presumption" as declared in the case of Orr v. St. Louis Union Trust Company, *supra*.

In the case at bar the money is traced into the account of intestate where it was commingled with his own funds. It was checked out of the bank by him but the record does not disclose whether he used it in his business, or in purchasing any of the assets of which he died seized. The record does not disclose the state of decedent's financial condition after or at the time of his death, that is whether he owned large sums, or whether his estate is solvent. It does not disclose how much may be expected from liquidation of assets remaining in the hands of administratrix after filing of the first settlement. It would seem that the facts here fall more nearly within the rule of Orr v. St. Louis Union Trust Co., *supra,* than within those of any other cited case.

Having had one of our opinions quashed because of failure to follow the rule declared in the Orr case, (whether said rule be sound or unsound), and not having been cited to, and not having found, any decision specifically overruling the decision in Orr v. St. Louis

Union Trust Company, *supra*, we hold that said decision is the latest controlling decision of the Supreme Court on the question presented and that it is controlling in the instant case.

The judgment is reversed and the cause is remanded with directions that the trial court set aside its judgment and decree heretofore rendered and enter up a new judgment in harmony. herewith. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is reversed and the cause is remanded and directions that the trial court set aside its judgment and decree heretofore rendered and enter up a new judgment in harmony herewith. All concur.